IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Deontai McDuffie, ) | CIVIL ACTION NO. 9:15-5109-MBS-BM |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Sgt. M. Williams and A/W Willie Davis, ) | |
| Defendants. ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants. Specifically, Plaintiff complains that excessive force was used against him by the Defendant Williams (a correctional officer) after a sprinkler head malfunctioned in his cell on August 12, 2015, that he did not thereafter receive adequate medical attention, while also complaining about the general condition of his cell. Plaintiff claims that the Defendant Davis (Associate Warden) inadequately responded to his grievances concerning the incident involving Williams. See generally, Plaintiff's Verified Complaint.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 21, 2016. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 30, 2016, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to file an adequate respone, the Defendants' motion may be granted, thereby ending his case. However, notwithstanding the specific instructions and warning as set forth in the Court's



Roseboro Order, Plaintiff has failed to ever file any response to the Defendants' motion for summary judgment, which is now before the Court for disposition.[1]

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the Defendants' motion and the docket of this case, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment.

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



First, this case should be dismissed for failure to prosecute under Rule 41(b), Fed.R.Civ.P., as Plaintiff meets all of the criteria for dismissal under Chandler Leasing Corp. . Lopez, 669 F.2d 929 (4th Cir. 1982).[2] Accordingly, this case should be dismissed for lack of prosecution. See Davis v. Williams, 588 F.2d 69, 70 (4th Cir. 1978); Rule 41(b), Fed.R.Civ.P.; see also Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989), cert. denied sub nom, Ballard v. Volunteers of America, 493 U.S. 1084 (1990) [Magistrate Judge's prior explicit warning that a recommendation of dismissal would result from plaintiff failing to obey his order was proper grounds for the district court to dismiss suit when plaintiff did not comply despite warning].[3]

Additionally, even if this case is not dismissed for failure to prosecute, Defendants are entitled to summary judgment on the merits. Plaintiff alleges in his complaint that on August 12, 2015 the sprinkler head in his cell "had busted", and his cell was filling with water. Plaintiff alleges that the Defendant Williams approached his cell door "in a very hostile manner" while holding a canister of chemical munitions. Plaintiff alleges that when Williams unsecured the food service flap on his cell door, he [Plaintiff] grabbed his mat and held it up to the flap to block it. Plaintiff alleges that at that point Williams used her hands to push the mat out of the way and administered chemical

---

[2]He is personally responsible for proceeding in a dilatory fashion, the Defendants are suffering prejudice due to having to expend time and resources on a case in which the Plaintiff is unresponsive, and no sanctions other than dismissal appear to exist as the Plaintiff is indigent (and therefore not subject to monetary sanctions) and he has otherwise failed to respond to Court filings despite Court orders requiring him to do so. Lopez, 669 F.2d at 920.

[3]After a litigant has received one explicit warning as to the consequences of failing to timely comply with an order of a Magistrate Judge, and has failed to respond to that order, the district court may, under Fed.R.Civ.P. 41(b), dismiss the complaint based upon the litigant's failure to comply with that court order. See Simpson v. Welch, 900 F.2d 33, 35-36 (4th Cir.1990); see also Ballard, 882 F.2d at 95-96 [holding that district court's dismissal following an explicit and reasonable warning was not an abuse of discretion].

3



munitions into his cell. Plaintiff alleges that shortly thereafter "maintenance" came and cut the sprinkler water off in his cell, that Williams and another correctional officer (Bostic) again unsecured the food service flap and asked Plaintiff to come to the door to be restrained, and that at this point he (Plaintiff) complied. Plaintiff alleges that he was then placed in restraints and taken to the holding cell while maintenance fixed the sprinkler head in his cell, after which he was returned to his cell. Plaintiff alleges that he was never seen by medical, was not adequately decontaminated, nor was his cell ever adequately decontaminated. However, Plaintiff acknowledges in his Complaint that he was seen by medical on August 13, 2015, and has attached as an exhibit to his Complaint a Request to Staff Member form confirming that he was seen "post use of force" on August 13, 2015. This exhibit further indicates that he was charged (apparently with a disciplinary violation) arising out of this event. Plaintiff then alleges that he filed a grievance with the Defendant Davis concerning this matter (Lee CI 0940-15), but also acknowledges that as of the date of the filing of his Complaint (Plaintiff's Complaint is signed December 21, 2015) that he had not received a final disposition of his grievance.[4] Plaintiff seeks monetary damages, as well as that "criminal charges" be brought against Williams. See generally, Plaintiff's Verified Complaint, with attached Exhibits.

        In support of summary judgment, the Defendant Williams has submitted an affidavit wherein she attests that on August 12, 2015, she was conducting a security check on the RHU[5] when she observed that Plaintiff had damaged the sprinkler head in his cell, causing the water to spray

---

[4]In a separate section of his Complaint, however, Plaintiff states that he did receive a final response to his grievance, and in fact Plaintiff has attached copies of both his Step 1 grievance and Step 2 grievance appeal to his Complaint, which indicate that he appealed his grievance through the Step 2 appeals process and received a final disposition.

[5]Restricted Housing Unit, also known as administrative segregation, where high security inmates are kept.



everywhere. Williams attests that she gave Plaintiff a directive to back up to the cell door to be restrined, but that he refused and attempted to block the food flap opening with his mattress. Williams attests that she then administered one quick burst of chemical munitions into Plaintiff's facial area, following which he complied with the directive and was restrained. Plaintiff was then removed from his cell and placed in a holding cell. Williams attests that maintenance was then notified to come and repair the sprinkler, while two other correctional officers (Fox and McKenny) escorted Plaintiff to medical for treatment. Williams attests that Plaintiff was examined by two registered nurses at medical (Williamson and Snead) and was found to have no injuries. After Plaintiff had been seen in medical, he was escorted back to his cell (after it had been decontaminated) without further incident. Williams attests that this incident was contemporaneously documented in a Use of Force Report, which is attached to her affidavit as Exhibit A. The handwritten Use of Force Report attached to the affidavit reflects the same information provided by Williams in her affidavit, including that Plaintiff was seen by Nurse Snead following this incident, and that he was being charged with refusing to obey orders and with damaging property valued at less than one hundred dollars. This report further indicates that four grams of chemical munitions was used in this incident. See generally, Williams Affidavit, with attached Exhibit.

The Defendants have also submitted a computer generated medical report indicating that, following the incident on August 12, 2015, Plaintiff was seen by R. N. Snead, following which he was "escorted out of medical in stable condition". Plaintiff was then seen again in medical the following day, August 13, 2015, by R. N. Williamson for a followup. Examination of the Plaintiff was essentially normal, there was no wheezing, his respirations were even and unlabored, there were no signs of distress, and it was noted that Plaintiff was smiling and "trying not to laugh" during the



examination. This medical entry further states "inmate has no further complaints and states at this time that he is 'fine'". See Defendants' Exhibit (medical note).

The evidence presented[6] and discussed herein does not create a genuine issue of fact as to whether Plaintiff's constitutional rights have been violated. With respect to Plaintiff's request in his Complaint that criminal charges be brought against Williams, Plaintiff has no constitutional right to, or in fact any judicially cognizable interest in, the criminal prosecution or non-prosecution of another person. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)[A private citizen does not have a judicially cognizable interest in the prosecution or nonprosecution of another person]; Diamond v. Charles, 476 U.S. 54, 64–65 (1986) [applying Linda R.S. v. Richard D. and collecting cases]; Collins v. Palczewski, 841 F.Supp. 333, 340 (D.Nev.1993) ["Long ago the courts of these United States established that 'criminal statutes cannot be enforced by civil actions.'"]. Therefore, this request for relief fails to set forth a viable claim.

Further, to the extent Plaintiff's claim is that the Defendant Davis (or anyone else) mishandled or improperly handled his grievances, that is not a claim cognizable in this Court in a § 1983 action, as there is no constitutional right of access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994)

---

[6]Although Plaintiff has offered no evidence, or even argument, in response to the Defendants' motion for summary judgment, he did submit a verified Complaint. In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Therefore, the undersigned has considered the factual allegations set forth by Plaintiff in his verified Complaint in issuing a recommendation in this case.



[inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005). Therefore, a defendant's failure to follow a prison's grievance procedures (even if that had been shown in this case) does not give rise to a § 1983 claim. Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; Moore v. Sergent, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); cf. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure].

Additionally, even if the Court were to assume for purposes of summary judgment that one or more of the Defendants violated a prison policy with respect to the force used during this incident,[7] the violation of a prison policy does not in and of itself constitute a violation of a plaintiff's constitutional rights, and therefore this is also not a claim assertable in a § 1983 action. See Keeler v. Pea, 782 F.Supp. 42, 44 C.D.S.C. 1992); cf. Scott v. Hamidullah, C/A No. 3:05-3027-CMC-JRM, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own

---

[7]In this regard, by Order of the Court the Defendants had earlier provided a copy of the SCDC policy concerning use of force for the Court's in camera review. See Court Docket No. 42.

7



policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

       Finally, Plaintiff's general and conclusory claim that Williams used excessive force against him and/or that he was not provided with adequate medical care following this incident also fails for lack of probative evidence. Plaintiff himself concedes in his verified Complaint that when Williams initially opened the food flap door on his cell that he (consistent with what Williams states in her affidavit) covered up the food service flap with his mattress. At this time (again as conceded by Plaintiff in his own allegations) the sprinkler head was continuing to pour out water into his cell. There is no indication other than that Williams was alone at the time, and she quite understandably would not have attempted to alone enter the cell of an unrestrained high security male inmate who was refusing to comply with commands. Under such circumstances, the use of a chemical spray by a prison official is not a violation of a prisoner's constitutional rights when used appropriately. Williams v. Benjamin, 77 F.3 756, 761 (4th Cir. 1996); Peterson v. Davis, 551 F.Supp. 137 (D.Md. 1982), aff'd without op., 729 F.2d 1453 (4th Cir. 1984); Williams v. Dehay, Nos. 94-7114, 94-7115, 1996 WL 128422 **2-3 (4th Cir. March 21, 1996); cf. Collins v. McGhee, No. 15-2437, 2016 WL 4579125 at * 4 (D.S.C. July 27, 2016) [Finding use of mace not excessive force where evidence demonstrated Plaintiff's behavior, even though confined in a cell, posed a threat in that he had destroyed SCDC property and presented a threat to the order of the institution and safety of the officers and inmates inside it], adopted by, 2016 WL 4541606 (D.S.C. Aug. 29, 2016). Indeed, chemical sprays are generally used in order to *avoid* having to use direct physical force, or in an attempt to lessen the amount of physical force necessary. Cf. Whitmore v. Walker, No. 04-837, 2009



WL 900034 at * 9 (S.D.Ill. Mar. 27, 2009) ["[E]ighth Amendment does not require prison guards to engage in physical struggle with an inmate before using chemical mace. Indeed, part of the rationale for using mace is to allow the guards to avoid engaging in physical altercations with an inmate."].

Prisons are dangerous places, and prison officials are entitled to take necessary precautions to protect themselves from risk of harm and injury at the hands of inmates, in particular high security inmates. See Grissom v. Roberts, No. 09-3128, 2009 WL 2601260 at * 6 (D.Kan. Aug. 24, 2009)[Finding that under the circumstances, which included Plaintiff refusing to obey orders, Plaintiff failed to show that the use of physical force including pepper spray was repugnant to the conscience of mankind]. Further, the evidence reflects that only a small amount of munitions (four grams) was used here as an alternative to direct physical force having to be used, and the Fourth Circuit has held that chemical sprays can be used constitutionally in small quantities to control a "recalcitrant inmate". Landman v. Peyton, 370 F.2d 135, 138, n. 2 (4th Cir. 1966);[8] cf. Townsend v. Anthony, No. 03-2528, 2006 WL 2076920, at * 9 (D.S.C. July 24, 2006) [Finding a twenty gram discharge was acceptable]; Plummer v. Goodwin, No. 07-2741, 2010 WL 419927 at * 7, n. 4 (D.S.C. Jan. 29, 2010) [Finding that a discharge of 33.5 grams was a relatively small amount]; see also, Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984) [In determining whether the amount of force used was reasonable, courts should evaluate the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used (to) determine the validity of the use . . . ."]; Landman, 370 F.2d at 138, n. 2 [Mace can constitutionally be used in small quantities to control a "recalcitrant inmate"]; Whitley v. Albers, 475 U.S. 312, 321 (1986) [Conduct only

---

[8]See also Bailey v. Turner, 736 F.2d 963, 968-969 (4th Cir. 1984)[same]; Collins, 2016 WL 4579125 at * 3.



actionable where evidence shows it was taken "in bad faith and for no legitimate purpose"]. There is also no evidence to show that, once Plaintiff complied with Williams instructions to come forward to the food flap and be handcuffed, any additional force was used in this case. Cf. Wilson v. Flynn, 429 F.3d 465, 469 (4th Cir. 2005)[Lack of evidence that officers used any improper force after restraining a prisoner "distinguishes [Plaintiff's] case from many in which we have held the Plaintiff has alleged an excessive force claim."]; cf. Mann v. Failey, 578 Fed.Appx. 267, 273 (4th Cir. July 17, 2014) [Noting that where evidence showed officers continued to apply force against inmate "well after he had ceased his resistance", claim could proceed].

Plaintiff has also submitted no evidence or argument (indeed, as previously noted, he did not even respond to the Defendants' motion for summary judgment) to support a finding that his constitutional rights were violated because he was not provided with adequate medical care or attention following this incident. The Defendants have provided evidence to show that Plaintiff was seen in medical by Nurse Snead following this incident, as well as by Nurse Williamson the following day, and that he had suffered no injuries. While Plaintiff (apparently) denies in his verified Complaint that he was seen by medical on the day of the incident, even he concedes that he was seen the following day, and there is no evidence (other than the general and conclusory claims in Plaintiff's Complaint) to show that he was suffering from any ill effects of chemical munitions or that he was denied adequate care or treatment in any way. See Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994); Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence



insufficient to defeat summary judgment on deliberate indifference claim]; see also House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; cf. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) ["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]. Therefore, this claim is without merit.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 13, 2017
Charleston, South Carolina



11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

